IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALBERTA GOINS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Case No. 07 C 7057 <br><br> Magistrate Judge Nan R. Nolan |

## MEMORANDUM OPINION AND ORDER

Alberta Goins appeals from an ALJ's decision denying her social security disability benefits. Because portions of the ALJ's decision are not supported by substantial evidence, the denial of benefits is reversed and this case is remanded for further proceedings consistent with this Opinion.

### I. Background

Goins claims to have become totally disabled on April 1, 1995 because of diabetes, "sight confusion, poor concentration, can't follow through, crampy hands and feet, hips hurt." (R. 90). Goins insured status for DIB purposes expired on December 31, 1998. That means Goins had to show that she was disabled on or before that date.

Goins was born on December 30, 1944. She has a history of a diabetes, hypertension, vision problems, and depression. Goins says that she can sit for up to two hours with her legs elevated, stand for more than 30 minutes, and lift ten pounds. Goins does a little dusting, occasionally does laundry, and can prepare some food. Because of her vision problems, Goins cannot go outside the house alone. Goins completed eighth

grade and has worked as a computer operations supervisor and key punch operator.

The ALJ applied the five-step analysis used to evaluate disability and found that Goins had not engaged in substantial gainful activity during the period from her alleged onset date of April 1, 1995 through her date last insured of December 31, 1998 (Step One); her insulin dependent diabetes mellitus, depression, hypertension, cataracts and status-post OS cataract and lens implant are severe impairments (Step Two); but that they do not qualify as a listed impairment (Step Three). The ALJ determined that Goins retained the residual functional capacity to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; sit, stand and walk 6 hours in an 8 hour workday; no more than frequent climbing of stairs and ramps; restricted from performing work requiring the use of ladders, scaffolds, or ropes; restricted from performing work at unprotected heights or around hazardous machinery; and restricted to performing no more than unskilled, routine work tasks. Given her RFC, the ALJ concluded that Goins was unable to perform her past relevant work as an assistant manager/supervisor, data entry worker, and key punch operator (Step Four). The ALJ found that there are a significant numbers of jobs in the national economy which Goins can perform: assembler (23,250 jobs); production inspector, checker and weigher (7,000 jobs); cashier (7,500 jobs); and information clerk (8,700) (Step Five).

**II.     Discussion**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled within the meaning of the Act, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently gainfully employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, see 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is able to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. 20 C.F.R. § 404.1520(a) (2004); Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." Clifford, 227 F.3d at 868 (quoting Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. Stevenson v. Chater, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. Estok v. Apfel, 152 F.3d 636, 638 (7th Cir. 1998).

The ALJ denied Goins' claim at Step 5, finding that by December 31, 1998, Goins retained the residual functional capacity to perform a range of light work. Goins raises two main challenges to the ALJ's decision: (1) the ALJ erred in failing to give controlling weight to the medical opinion of her treating physician, Tyla Courtney, M.D. and (2) the ALJ erred in failing to consult a medical expert. Goins' arguments have merit.

### A.     ALJ's RFC Evaluation

Goins contends that the ALJ's RFC findings are not supported by substantial evidence. In this regard, Goins argues that the ALJ erred by not affording controlling weight to Dr. Courtney's opinion that she was disabled.

A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence." Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006). A claimant is not disabled simply because her treating physician says so. Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001). "The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." Id. (quoting Stephens v. Heckler, 766 F.2d 284, 289 (7th Cir. 1985)).

Even if controlling weight is not given to a treating physician's opinion, it may still be afforded some weight by the ALJ. If a treating physician's opinion is not entitled to controlling weight, the ALJ considers several factors in determining the weight to give the opinion, including: the length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, the degree to which the opinion is supported by medical signs and laboratory findings, the consistency of the opinion with the

record as a whole, and whether the opinion was from a specialist. 20 C.F.R. § 404.1527(d)(2)-(5). Social Security Ruling 96-2p provides:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

S.S.R. 96-2p at 4.

Dr. Courtney has had a long treating relationship with Goins. Goins has been Dr. Courtney's patient since 1993. (R. 268). In April 1995, Goins was first diagnosed with diabetes. The issue here is the severity of Goins' condition prior to Goins' last date of insured status of December 31, 1998. Goins and her counsel reported that Dr. Courtney's records prior to December 31, 1998 had been destroyed in the normal course of business. (R. 342-43).

Despite the destruction of Dr. Courtney's records predating the date Goins was last insured, the record contains contemporaneous evidence of disability prior to December 31, 1998. On July 26, 1996, Dr. Courtney completed a "Continuing Report of Disability" insurance form and opined that Goins was totally disabled from her own occupation and unable to perform the duties of another occupation. (R. 127). Dr. Courtney's report contained a diagnosis of diabetes mellitus and blurred vision. Id. Dr. Courtney reported that Goins had been disabled from April 1995 through the date of the report, July 26, 1996. Id. Dr. Courtney listed all the treatment dates since her last report as January 23, 1996,

February 20, 1996, March 22, 1996, April 26, 1996, May 21, 1996, July 2, 1996, and July 26, 1996. Id.

On May 4, 2007, Dr. Courtney completed a five page Diabetes Mellitus Residual Functional Capacity Questionnaire in which she gave a contemporaneous and retrospective opinion. (R. 264-68). Dr. Courtney indicated that Goins suffers from diabetes mellitus, hypertension, and chronic constipation. (R. 264). Dr. Courtney identified Goins' symptoms as: fatigue, extreme pain and numbness, difficulty walking, episodic vision blurriness, retinopathy, frequency of urination, hot flashes, sweating, difficulty thinking/concentrating, and dizziness/loss of balance. Id. The clinical findings Dr. Courtney identified were decreased sensation to pinprick in her lower extremities, abdominal bloating, decreased vision, and excessive tearing in the eyes. Id. Dr. Courtney indicated that Goins is not a malingerer. Id. Dr. Courtney also indicated that Goins' impairments were reasonably consistent with the symptoms and functional limitations she described in her evaluation. Id. at 265. Dr. Courtney stated that Goins' symptoms associated with diabetes were severe enough to frequently interfere with her attention and concentration. Id. Dr. Courtney opined that Goins was incapable of tolerating even a low stress job because her blood sugar was very labile and she requires frequent insulin injections and blood sugar monitoring. Id. Dr. Courtney explained that Goins' medication causes dizziness and visual impairment. Id.

Dr. Courtney estimated Goins' functional limitations in a competitive work situation as follows: walk 1-2 city blocks without rest or severe pain; stand 30 minutes before needing to sit down, walk around, etc.; sit and stand less than 2 hours in an 8-hour working

day (with normal breaks); needs a job which permits shifting positions at will from sitting, standing or walking; needs a job which includes periods of walking around during an 8-hour working day; must walk every 45 minutes for 4 minutes; frequently needs to take unscheduled breaks during an 8-hour working day for 20-30 minutes; needs to elevate legs 100% of time when sitting; rarely lift less than 10 lbs; rarely twist and scoop; never crouch, climb ladders, or climb stairs; has significant limitations in reaching, handling or fingering; can use hand to grasp, turn, twist objects 10% of the time during an 8-hour working day; can use fingers 5% of the time during an 8-hour working day for fine manipulations; and never reach with arms including overhead; avoid all exposure to extreme cold, extreme heat, high humidity, fumes, odors, dusts, gases, perfumes, cigarette smoke, soldering fluxes, solvents/cleaners, and chemicals. (R. 265-67). Dr. Courtney indicated that Goins' impairments produced "good days" and "bad days" and estimated Goins would be absent from work more than four days per month as a result of her impairments. Dr. Courtney stated that Goins has impaired and blurred vision, cannot see, and is dizzy. (R. 267).

Dr. Courtney concluded the Diabetes Mellitus Residual Functional Capacity Questionnaire by stating:

> The limitations and assessments in the attached Diabetes Mellitus Residual Functional Capacity Questionnaire do not only reflect my current opinions but are also assessments and limitations which date back to the period of time prior to 1998. The basis for this opinion is as follows: Mrs. Goins has been my patient since 1993. She was diagnosed with diabetes mellitus in 1995. She was hospitalized and has had a stormy course. She now takes 2-3 insulin injections per day. Blood sugars still are not controlled. She has diabetic retinopathy. She has blurred vision and decreased visual acuity. She cannot work and her condition is expected to worsen[]. She is compliant and is honest and tries hard to continue to function in spite of her

-7-

impairments.

(R. 268).

The ALJ rejected Dr. Courtney's opinions, finding that Goins: (1) can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently and (2) can sit, stand, and walk 6 hours in an 8-hour workday. (R. 19). The ALJ found that Goins could perform a range of light work, limited by no more than frequent climbing of stairs and ramps; restricted from performing work requiring the use of ladders scaffolds, or ropes; restricted from performing work at unprotected heights or around hazardous machinery; and restricted from performing no more than unskilled, routine work tasks. Id.

The ALJ cited five reasons for rejecting Dr. Courtney's opinion that Goins was disabled before her date last insured: (1) Dr. Courtney's July 1996 Continuing Report of Disability is inconsistent; (2) Dr. Courtney's July 1996 assessment of disability is unsupported by objective medical facts; (3) the medical records at Exhibit 2F from West Suburban Hospital Medical Center do not establish diabetes of a disabling severity; (4) the remaining medical evidence in the file is dated after the date of last insured; and (5) Dr. Courtney's May 2007 assessment and opinion of disability is not supported, is inconsistent with other evidence in the record (Exhibits 11F, 5F, 8F, 9F, 4E, and 6E), and is not related to any documented clinical or diagnostic findings.

Many of the reasons provided by the ALJ for rejecting Dr. Courtney's opinions do not withstand scrutiny. One reason given by the ALJ for rejecting Dr. Courtney's opinion is that all the medical evidence in the record (other than the West Suburban Hospital Medical Center records of April and May 1995 which establish new onset of diabetes

-8-

mellitus and Dr. Courtney's July 26, 1996 opinion) is dated after December 31, 1998, the last insured date. This finding ignored certain evidence. There is additional medical evidence in the file dated before December 31, 1998. The record contains a receipt from Dr. Carlos Crisostomo with a date of service of September 22, 1995 and a diagnosis code of 250.50, which Goins says represents diabetes with ophthalmic manifestations and medium manifestations or complications. (R. 270). The ALJ's decision does not mention Dr. Crisostomo's note dated September 22, 1995. Dr. Crisostomo's note could possibly corroborate Dr. Courtney's opinion regarding the severity of Goins' diabetes during the critical period prior to her date last insured and the ALJ had a duty to minimally discuss it. The Commissioner defends the ALJ's decision by arguing that Dr. Crisostomo's receipt was not before the ALJ when he rendered his decision. The Commissioner is wrong. Dr. Crisostomo's receipt was part of the record before the ALJ as page 7 of Exhibit 13F. (R. 270, 316). The ALJ must consider this evidence on remand.

Another reason given by the ALJ for rejecting Dr. Courtney's May 2007 assessment was that it was inconsistent with Exhibits 11F(Dr. Panton's letter dated 11/20/04 ); 5F (Dr. Hillman's ophthalmology consultative examination dated 2/13/04); 8F (Psychiatric Review Technique Form dated 9/22/04); 9F (Report of Contact dated 9/27/04); 4E (Disability Report Appeal dated 5/6/04); and 6E (undated Claimant's Statement When Request for Hearing is Filed and the Issue is Disability). The ALJ did not explain why he found Dr. Courtney's May 2007 assessment and opinion to be inconsistent with Exhibits 11F, 5F, 8F, 9F, 4E, and 6E in the record. When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to his conclusion." Clifford, 227 F.3d at 872. The

ALJ did not build an accurate and logical bridge between the evidence and the result because the ALJ did not identify any of the alleged inconsistencies or explain how they influenced his decision. In order to reject Dr. Courtney's opinion, the ALJ was rejected to give specific reasons for doing so that were supported by the record to enable this court to trace the path of his reasoning. The court cannot do that here. Because the ALJ failed to minimally articulate the reasoning behind his finding that Dr. Courtney's May 2007 assessment and opinion was inconsistent with other evidence in the record, a remand is warranted.

The ALJ also mischaracterized the record with regard to Dr. Courtney's May 2007 assessment and opinion. The ALJ stated that he did not credit or give any significant weight to Dr. Courtney's May 2007 assessment because it was "not related to any documented clinical or diagnostic findings." (R. 20). The ALJ's characterization of Dr. Courtney's May 2007 assessment is not entirely accurate. Although Dr. Courtney's records from the time period before the date last insured were destroyed, she listed specific "clinical findings" supporting her opinion in the May 2007 assessment. (R. 264). The clinical findings Dr. Courtney identified were decreased sensation to pinprick in her lower extremities, abdominal bloating, decreased vision, and excessive tearing in eyes. Id. If the ALJ believes Dr. Courtney's functional limitation findings are disproportionate to her clinical findings, then he should have said so and supported that position.

Although not argued by Goins, the ALJ's RFC finding is also problematic because it is unaccompanied by any analysis of the relevant evidence. The ALJ did not adequately explain how he arrived at his pre-December 31, 1998 RFC conclusions. "Residual

-10-

Functional Capacity (RFC) is an administrative assessment of what work-related activities an individual can perform despite her limitations." Dixon, 270 F.3d at 1178. In determining the claimant's RFC, the ALJ must consider both the medical and nonmedical evidence in the record. Id.

The ALJ failed to minimally articulate the reasoning behind his RFC determination as required by SSR 98-6p for the period prior to December 31, 1998. The ALJ found that Goins could: (1) can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently and (2) can sit, stand, and walk 6 hours in an 8-hour workday. (R. 19). The ALJ found that Goins could perform a range of light work, limited by no more than frequent climbing of stairs and ramps; restricted from performing work requiring the use of ladders scaffolds, or ropes; restricted from performing work at unprotected heights or around hazardous machinery; and restricted from performing no more unskilled, routine work tasks. Id. The ALJ concluded:

> In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 4040.1529 and SSRs 96-4p and 96-7p. The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

(R. 19).

The RFC finding must be supported by substantial evidence in the record. The ALJ made his RFC finding without any citation to the record. It is unclear from the ALJ's decision what medical evidence the ALJ relied upon to make this determination. Other than rejecting Dr. Courtney's opinion, the ALJ did not provide any explanation for his RFC

conclusion. The ALJ's RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." S.S.R. 96-8p at 7. The ALJ's RFC analysis consists only of rejecting Dr. Courtney's opinions. (R. 19-20). No treating or consulting examining physician opined that Goins could perform a range of light work. The state agency physicians concluded that Goins was not disabled (R. 42-47), but none of the state agency reviewers or consulting examining physicians completed a physical RFC assessment. This matter must be reversed because the ALJ failed to cite any evidence supporting his RFC decision and failed to comply with SSR 96-8p. On remand, the ALJ shall clearly articulate his reasons for his RFC determination.

### B. ALJ's Development of Record

Goins also argues that the ALJ erred by failing to consult a medical expert as to the severity of her impairments through the date last insured. "Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record. Failure to fulfill this obligation is 'good cause' to remand for gathering of additional evidence." Smith v. Apfel, 231 F.3d 433, 437 (7th Cir. 2000).

The Court agrees that the state of the record developed by the ALJ warrants a remand. After rejecting Dr. Courtney's opinions, the ALJ did not have sufficient other evidence from which to determine Goins' disability. The ALJ admitted that the evidence of record "fails to demonstrate the extent of severity and associated limitations prior to her date last insured of December 31, 1998." (R. 18). Because there was not sufficient evidence in the record for the Commissioner to make an informed assessment as to Goins'

impairments and the limitations they imposed on her work abilities prior to December 31, 1998, the ALJ had a duty to obtain additional evidence.

At the very least, if the ALJ's concern was the lack of support for Dr. Courtney's opinion, he should have recontacted Dr. Courtney before rejecting her opinion. The Social Security Regulation, 20 C.F.R. § 404.1512(e), requires the ALJ to recontact a treating physician when the physician's report contains a conflict or ambiguity that must be resolved, does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory techniques. See also Barnett v. Barnhart, 381 F.3d 664, 669 (7th Cir. 2004) (holding "[a]n ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable."); see also S.S.R. 96-2p (stating "in some instances, additional development required by a case—for example, to obtain more evidence or to clarify reported clinical signs or laboratory findings—may provide the requisite support for a treating source's medical opinion that at first appeared to be lacking or may reconcile what at first appeared to be an inconsistency between a treating source's opinion and other substantial evidence in the case record."). Although a treating physician's opinion on an ultimate issue such as whether the claimant is disabled is not entitled to controlling weight, "the ALJ must consider the opinion and should recontact the doctor for clarification if necessary." Barnett, 381 F.3d at 669. Social Security Ruling 96-5p states in relevant part:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

S.S.R. 96-5p at *6. Here, the ALJ questioned the sufficiency of Dr. Courtney's July 1996 and May 2007 reports. In light of the limited contemporaneous medical records, the ALJ's findings that Dr. Courtney's reports were not supported by objective medical facts, and the absence of other medical opinion evidence from the relevant time period or retrospective opinions, the ALJ should have taken additional steps to develop the record. On remand, the ALJ must seek additional evidence from Dr. Courtney.

After recontacting Dr. Courtney on remand, the ALJ shall also determine whether there is a need to call a medical expert to assess whether Goins was disabled through the date last insured. If Dr. Courtney cannot give sufficient evidence about the severity of Goins' impairments to determine whether she was disabled through the date last insured, the ALJ shall call a medical expert to provide an informed basis for determining whether Goins was disabled during the relevant time period. Green v. Apfel, 204 F.3d 780, 781 (7th Cir. 2000) (stating "the procedure for adjudicating social security disability claims departs from the adversary model to the extent of requiring the administrating law judge to summon a medical expert if that is necessary to provide an informed basis for determining whether the claimant is disabled."); see also 20 C.F.R. § 404.1527(c)(3).

Finally, the Court notes that contemporaneous medical corroboration is not always necessary to support a finding of disability. Lay evidence can provide the requisite corroboration. "Retrospective diagnosis of an impairment, even if uncorroborated by contemporaneous medical records, but corroborated by lay evidence relating back to the claimed period of disability, can support a finding of past impairment." Allord v. Barnhart, 455 F.3d 818, 822 (7th Cir. 2006). On remand, the ALJ must consider all of the

contemporaneous evidence, not just the limited contemporaneous medical evidence. The ALJ shall direct questions to Goins, her husband, and any other witnesses which focus the testimony on the relevant period of time.

III. **Conclusion**

Substantial evidence does not support the ALJ's rejection of Dr. Courtney's opinion and the ALJ failed to fully develop the record. This ALJ's decision is reversed and this case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion.

ENTER:

*Nan R. Nolan*

Nan R. Nolan
United States Magistrate Judge

Dated: October 16, 2008